**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**J. PETER MCPARTLON,**

    **Plaintiff,**

    v.

**CONTINENTAL CASUALTY COMPANY,**

    **Defendant.**

**1:15-cv-299 (GLS/CFH)**

_____

**CONTINENTAL CASUALTY COMPANY,**

    **Plaintiff,**

    v.

**J. PETER MCPARTLON,**

    **Defendant.**

**1:15-cv-1520 (GLS/CFH)**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR J. PETER MCPARTLON:**<br>Burke, Scolamiero Law Firm<br>7 Washington Square<br>Albany, NY 12212 | THOMAS J. MORTATI, ESQ. |
| **FOR CONTINENTAL CASUALTY COMPANY:**<br>Elenius Frost & Walsh<br>120 White Plains Road, Suite 220<br>Tarrytown, NY 10591 | WILLIAM P. LALOR, ESQ. |

**Gary L. Sharpe**
**Senior District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff/insured J. Peter McPartlon commenced this diversity action, which arises out of an alleged breach of an insurance contract, against defendant/insurer Continental Casualty Company (CCC) for damages and a declaratory judgment ordering CCC to indemnify and defend him against claims in an underlying state court personal injury lawsuit. (*See generally* Am. Compl., Dkt. No. 5.[1]) McPartlon also alleges that CCC acted in bad faith. (*Id.* at 10.) Thereafter, CCC commenced a related action seeking a declaration that it has no duty to indemnify or defend McPartlon in a separate but related underlying state court personal injury lawsuit. (*See generally* Compl., Dkt. No. 1, 1:15-cv-1520.) Pending are CCC's motion for summary judgment and cross motion for summary judgment in both actions as well as McPartlon's cross motion for summary judgment and motion to dismiss. (Dkt. Nos. 23, 28; Dkt. Nos. 8, 10, 1:15-cv-1520.) For the reasons that follow, CCC's motions are granted, McPartlon's motion to

---

[1] Unless otherwise noted, all citations are to documents filed in 1:15-cv-299.

dismiss is denied as moot, and his cross motion for summary judgment is denied.[2]

## II. **Background**[3]

McPartlon has owned numerous rental properties in the City of Albany and the greater Capital District area, including 72 Park Avenue, Albany, New York, which is the property at issue. (Def.'s Statement of Material Facts (SMF) ¶ 1, Dkt. No. 23, Attach. 2.) McPartlon operated his rental property business under various business organizations, including Parkland Management, Parkland Rentals, Parkland Development Corporation, and Kingsway Arms. (Def.'s SMF, Dkt. No. 10, Attach. 2 ¶¶ 8-9, 1:15-cv-1520.[4]) By approximately 2005, McPartlon had delegated the day-to-day business operations to his son, Michael McPartlon, and he consented to be bound by his son's deposition testimony in the actions before this court. (Def.'s SMF ¶ 1 n.1.) CCC issued insurance policies to

---

[2] CCC's complaint includes a request for attorney's fees. (Dkt. No. 1 at 11, 1:15-cv-1520). The court does not reach that issue here, as such a request must be made by motion in accordance with Rule 54 of the Federal Rules of Civil Procedure.

[3] The court recognizes the different standards of review under the Federal Rules of Civil Procedure for a Rule 12 motion to dismiss and a Rule 56 motion for summary judgment. At this juncture, the case can be adjudicated on the Rule 56 standard and, thus, the facts presented are undisputed unless otherwise noted.

[4] Technically, CCC is the plaintiff in 1:15-cv-1520. However, for uniformity and to avoid confusion, the court refers to each of CCC's statements of material facts as "Def.'s."

McPartlon on his rental properties that were in effect between 1992 and 1996. (*Id.* ¶ 19; Dkt. No. 23, Attach. 9 at 3-7.)

As indicated by CCC's issued insurance policies, the insured, here McPartlon, had a duty to notify CCC in the event of an "occurrence" or "suit" against him "as soon as practicable." (Dkt. No. 23, Attach. 9 at 7-8.) Under the policy, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Dkt. No. 10, Attach. 10 ¶ 11, 1:15-cv-1520.) The policy defines "suit" as "a civil proceeding in which damage because of 'bodily injury' . . . to which this insurance applies are [sic] alleged." (*Id.*) Additionally, "bodily injury" is defined in the policy as "injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.*)

Following a 1993 environmental investigation at 72 Park Avenue, Albany, New York, the Albany County Department of Health (DOH) notified Donna Witko of Parkland Management that "an elevated blood lead level has been verified in a child."[5] (Def.'s SMF ¶ 9; Dkt. No. 23, Attach. 12 at

---

[5] Witko "sort of managed [McPartlon's rental] properties at that time," including dealing with tenants, collecting rent, and being the point of contact for building maintenance issues. (Dkt. No. 23, Attach. 5 at 24, 29.)

4

2.[6]) The affected child was Rashiek Haynes, who is the plaintiff in one of the underlying state court lawsuits. (Def.'s SMF ¶ 2, 1:15-cv-1520; Dkt. No. 10, Attach. 13 at 4-30, 1:15-cv-1520.) Rashiek Haynes is a sibling of Nakira Haynes, the plaintiff in the other underlying state court lawsuit. (Def.'s SMF ¶ 10; Dkt. No. 23, Attach. 7 at 2-46.) McPartlon did not disclose the results of this investigation to CCC until approximately August 2015.[7] (Def.'s SMF ¶ 11; Def.'s SMF ¶ 12, 1:15-cv-1520.)

On or about July 24, 2013, McPartlon was served in the underlying state court lawsuit commenced by Nakira Haynes. (Def.'s SMF ¶ 3.) Among other things, Nakira Haynes alleged that McPartlon was negligent in failing to abate lead paint hazards, which caused her injuries. (Dkt. No. 23, Attach. 7 ¶¶ 56-73.) McPartlon did not notify CCC about the underlying lawsuit until June 17, 2014 by letter from his corporate counsel addressed to "CNA Insurance." (Def.'s SMF ¶ 5.) As a result of McPartlon's untimely notice, CCC denied coverage as to Nakira Haynes' underlying state court lawsuit. (*Id.* ¶ 7.)

---

[6] This notification letter, (Dkt. No. 23, Attach. 12 at 2), is hereinafter referred to as the 1994 DOH Report.

[7] McPartlon received the 1994 DOH report in discovery in Nakira Haynes' state court action by letter dated September 20, 2013, but failed to notify CCC about the 1994 DOH report until approximately August 2015. (Def.'s SMF ¶ 11; Def.'s SMF ¶ 12, 1:15-cv-1520.)

5

After service of Nakira Haynes' lawsuit, McPartlon's son, Michael, realized that he had not kept the pertinent insurance policies. (*Id.* ¶ 15.) In order to identify his then-unknown insurance carrier, Michael testified that a "week or two" after being served: (1) he searched McPartlon's property for boxes labeled "do not destroy," which would likely contain the oldest corporate documents; (2) he contacted a former business colleague and Witko; (3) he telephoned three out of five of his insurance brokers; and (4) McPartlon searched his personal records. (*Id.*) All attempts were unsuccessful. (*Id.*) Ultimately, by June 2014, Michael remembered that another family business had insurance through CNA, an affiliate of CCC, and this prompted his letter tendering a claim to CCC about the underlying Nakira Haynes state court lawsuit. (*Id.* ¶ 17.)

Rashiek Haynes filed suit against McPartlon in December 2014 for personal injuries related to lead exposure. (Dkt. No. 10, Attach. 13 at 4-30, 1:15-cv-1520.) After McPartlon tendered notice of the claim to CCC in January 2015, CCC has defended McPartlon in that suit. (*Id.* at 2-3; Dkt. No. 10, Attach. 15 at 2-3, 1:15-cv-1520; Def.'s SMF ¶ 3, 1:15-cv-1520.) Spurred by its receipt of the 1994 DOH report in or around August 2015, CCC seeks a declaration in this action that it has no duty to indemnify or

6

defend McPartlon in Rashiek Haynes' lawsuit. (Compl. ¶ 29, 1:15-cv-1520; Def.'s SMF ¶ 12, 1:15-cv-1520.)

### III. Standard of Review[8]

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV. Discussion

#### A. Timeliness of Notice

*1. Nakira Haynes' Underlying State Court Lawsuit*

CCC argues that it does not have a duty to defend or indemnify McPartlon in the underlying state court lawsuit brought by Nakira Haynes because he failed to provide timely notice of the 1994 DOH report, which is an "occurrence" under the policy. (Dkt. No. 23, Attach. 1 at 5, 7-8.) CCC also argues that McPartlon failed to provide timely notice of Nakira Haynes' lawsuit itself. (*Id.* at 5-6, 9-15.) Specifically, CCC contends that

---

[8] As noted above, the court appreciates the difference between the standards of review for a motion to dismiss and a summary judgment motion. Because the parties have fully briefed their arguments based on the summary judgment standard, the court denies McPartlon's motion to dismiss, (Dkt. No. 8, 1:15-cv-1520), as moot.

7

McPartlon's failure to provide notice of the 1994 DOH report for approximately twenty years or of Nakira Haynes' lawsuit for almost eleven months bars his insurance coverage as to that suit. (*Id.* at 5-15.) Additionally, CCC asserts that McPartlon has failed to satisfy his burden that his untimely notice was justified or excused. (*Id.* at 10-15.)

In response, McPartlon argues that CCC has a broad duty to defend unless there is no factual or legal basis for indemnity. (Dkt. No. 28, Attach. 23 at 6-10.) McPartlon also maintains that the 1994 DOH report is not an "occurrence" that triggers a notice requirement. (*Id.* at 10-13; Dkt. No. 12 at 5-7, 1:15-cv-1520.) Further, McPartlon asserts that his delayed notice was excusable because, among other things: (1) he did not know who his insurance carrier was; (2) he did not own the property for approximately twenty years before the underlying state court lawsuit; (3) his insurance agent passed away; and (4) the insurance agency closed. (Dkt. No. 28, Attach. 23 at 3-4, 15.) In any event, McPartlon contends that CCC was not prejudiced by his late notice. (*Id.* at 7-9.)

An insurance contract stating that the insured must notify the insurer of an occurrence or claim "as soon as practicable" requires that notice be provided within a reasonable time under the circumstances. *See Travelers*

8

*Ins. Co. v. Volmar Constr. Co.*, 300 A.D.2d 40, 42 (1st Dep't 2002). Failure to give timely notice vitiates the contract as a matter of law. *See Argo Corp. v. Greater N.Y. Mut. Ins. Co.*, 4 N.Y.3d 332, 339 (2005).[9] An insured has a duty to give notice when he or she "could glean a reasonable possibility of the policy's involvement" based on "the information available relative to the accident." *Paramount Ins. Co. v. Rosedale Gardens, Inc.*, 293 A.D.2d 235, 239-40 (1st Dep't 2002). Although a delay may be excused in some circumstances, the insured bears the burden of proof. *See Sec. Mut. Ins. Co. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 441 (1972); *Olin Corp. v. Ins. Co. of N.A.*, 966 F.2d 718, 724 (2d Cir. 1992). Generally, the reasonableness of an excuse is a jury question, but a court

---

[9] Contrary to McPartlon's argument, the policies relevant to this case, which were in effect between 1992 and 1996, do not require CCC to show it was prejudiced by McPartlon's untimely notice before it can deny coverage. (Dkt. No. 28, Attach. 23 at 7-9.) Under New York common law, an insurer does not need to show that it is prejudiced by the insured's untimely notice. *See Argo Corp. v. Greater N.Y. Mut. Ins. Co.*, 4 N.Y.3d 332, 339 (2005). In 2008, New York amended its insurance law statute to alter the state's common law rule and now reads that the "failure to give any notice required to be given by [an insurance] policy within the time prescribed therein shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide timely notice has prejudiced the insurer." N.Y. Ins. Law § 3420(a)(5). This provision "became effective on January 17, 2009, and it does not apply retroactively to policies issued before that date." *Indian Harbor Ins. Co. v. City of San Diego*, 972 F. Supp. 2d 634, 648 (S.D.N.Y. 2013). "Thus, the no-prejudice rule governs policies that were issued prior to January 17, 2009 . . . while Section 3420(a)(5) governs policies 'issued or delivered' in New York on or after January 17, 2009 and requires an insurance carrier to show prejudice before a claim can be barred for late notice." *Id.* Accordingly, Section 3420(a)(5) does not govern the policies at issue here, which were issued before January 17, 2009. CCC thus does not need to demonstrate that McPartlon's untimely notice was prejudicial.

may decide the question as a matter of law where "either no excuse is advanced or a proffered excuse is meritless." *Olin Corp.*, 966 F.2d at 724.

McPartlon essentially argues that the 1994 DOH report did not specifically identify information that would put him on notice of a potential claim. (Dkt. No. 28, Attach. 23 at 10-13.) In support, McPartlon cites readily distinguishable authority. (*Id.*) For instance, he relies on cases that hold that generalized notice of a code violation does not trigger an insured's duty to notify an insurer. *See, e.g.*, *Chama Holding Corp. v. Generali-U.S. Branch*, 22 A.D.3d 443 (2d Dep't 2005); *Scharf v. Generali-U.S. Branch*, 259 A.D.2d 349 (1st Dep't 1999). However, that is not the case here. The 1994 DOH report specifically identified a minor with an elevated blood lead level who resided at the apartment and conditions that violated Public Health Law. (Dkt. No. 23, Attach. 12 at 2.) Further, the report required that repairs to remedy the violations be completed within fourteen days or "legal action w[ould] be initiated by [DOH]." (*Id*.) Undoubtedly, the 1994 DOH report allowed McPartlon to "glean a reasonable possibility of the [insurance] policy's involvement." *Paramount Ins. Co.*, 293 A.D.2d at 239-40.[10] Accordingly, the 1994 DOH report was

---

[10] McPartlon contends that he did not receive notice of the 1994 DOH report because it was addressed to Donna Witko of Parkland Management. (Dkt. No. 23, Attach. 12 at 2). However, this contention is contradicted by his son's deposition testimony admitting that Witko "sort of

an "occurrence" under the policy, which would trigger McPartlon's notice requirements to CCC.

Furthermore, McPartlon failed to satisfy his burden to present a question of fact regarding whether his late notice was justified. First, McPartlon argues that his delay is excusable because he lacked documentation of the insurance policies, the insurance agent passed away, and the insurance agency closed. (Dkt. No. 28, Attach. 23 at 4, 15.) All of these excuses rest on the premise that an insurer bears the burden of an insured's own negligence in maintaining his records and, therefore, fail as a matter of law. Indeed, it is "the responsibility of the insured, not the insurance company, to keep track of which carriers have provided it with liability insurance." *Olin Corp.*, 966 F.2d at 725; *see Eagle Ins. Co. v. Garcia*, 280 A.D.2d 476, 477 (2d Dep't 2001) ("An insured's ignorance of his or her insurance carrier constitutes gross negligence and is not a valid excuse for the failure to provide the carrier with timely notice.").

---

managed the properties at the time," including dealing with tenants, collecting rent, and being the point of contact for building maintenance issues. (Dkt. No. 23, Attach. 5 at 24, 29.) And McPartlon asserted that Parkland Management was "his management company." (Dkt. No. 12, Attach. 4 ¶ 18, 1:15-cv-1520.) Thus Witko's knowledge of the 1994 DOH report is imputed to McPartlon. *See Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784 (1985) ("[K]nowledge acquired by an agent acting within the scope of h[er] agency is imputed to h[er] principal and the latter is bound by such knowledge although the information is never actually communicated to [the principal]."). Finally, McPartlon's other attacks on the 1994 DOH report are meritless for the reasons set forth by CCC. (Dkt. No. 10 at 16 n.7, 1:15-cv-1520; Dkt. No. 16 at 4-5, 1:15-cv-1520.)

Furthermore, McPartlon failed to make diligent efforts to identify his insurance carrier once he received notice of the underlying state court lawsuit. *See GJF Const., Inc. v. Sirius Am. Ins. Co.*, 89 A.D.3d 622, 625 (1st Dep't 2011) (holding insured did not proffer justifiable excuse for late notice of suit when it failed to make "reasonably diligent efforts to ascertain whether coverage existed . . . in order to promptly notify [insurer]"). CCC first learned of Nakira Haynes' state court lawsuit on June 17, 2014, when McPartlon sent a letter from his corporate counsel to "CNA Insurance." (Def.'s SMF ¶¶ 5-6.) This was almost one year since McPartlon had been served in that underlying state court action on July 24, 2013. (*Id.* ¶ 3.) At no point before his tender letter did McPartlon consult counsel or an insurance broker.[11] (*Id.* ¶¶ 15-18.) Rather, Michael, McPartlon's son who ran the day-to-day business operations, realized sometime after his search for the missing policies that CNA had issued insurance policies to another family business, which prompted his tendered claim to CCC. (*Id.* ¶ 17.) Because service in a lawsuit "would have prompted any person of ordinary

---

[11] McPartlon's son "contacted" his corporate attorney, (Dkt. No. 28, Attach. 24 ¶ 16), but, given the overall lack of diligence—including the failure to contact any of the various attorneys who had been retained closer in time to 1996—any consultation with counsel was perfunctory, (Def.'s SMF ¶¶ 15-18). Moreover, although McPartlon's son telephoned three out of five former insurance brokers, he did not write any of them and seemingly failed to communicate with them in any meaningful way. (*Id.* ¶¶ 15, 18.)

12

prudence to consult either an attorney or an insurance broker," McPartlon failed to raise a question of fact that he made reasonably diligent efforts to ascertain whether coverage existed. *Winstead v. Uniondale Union Free Sch. Dist.*, 201 A.D.2d 721, 723 (2d Dep't 1994).

For these reasons, McPartlon's proffered excuses for his delayed notice fail as a matter of law.[12]

    2.    *Rashiek Haynes' Underlying State Court Lawsuit*

As with Nakira Haynes' lawsuit, CCC contends that it does not have a duty to defend or indemnify McPartlon in the underlying state court lawsuit brought by Rashiek Haynes because McPartlon failed to provide timely notice of the 1994 DOH report, which is an "occurrence" under the policy. (Dkt. No. 10 at 10-13, 16-17, 1:15-cv-1520.) The same reasoning articulated above applies to Rashiek Haynes' lawsuit, and accordingly CCC has no duty to defend or indemnify McPartlon as to that action.

## B. <u>Bad Faith</u>

McPartlon claims that CCC acted in bad faith in denying coverage as to the underlying state court lawsuit brought by Nakira Haynes. (Am. Compl., ¶ 36.) CCC argues that McPartlon's bad faith claim fails as a

---

[12] Even if the court were to hold that McPartlon raises a question of fact as to whether his delayed notice of the suit was justified, it would be of no moment because McPartlon has failed to do so regarding his delayed notice of the "occurrence."

matter of law because there is no cognizable claim for the denial of insurance in New York where an insurer has an arguable basis to disclaim coverage. (Dkt. No. 23, Attach. 1 at 15-16 (citing *Nouveau Elevator Indus., Inc. v. Cont'l Cas. Ins. Co.*, No. 05-CV-0813, 2006 WL 1720429, at *8 (E.D.N.Y. June 21, 2006)).) In response, McPartlon cites no evidence that CCC lacked an arguable basis to disclaim coverage or otherwise acted in bad faith. (Dkt. No. 28, Attach. 23 at 15-16.)

As evidenced above, the court concurs that CCC had a basis to deny coverage regarding Nakira Haynes' underlying lawsuit because McPartlon failed to provide timely notice of the suit. CCC also had a basis to deny coverage based on McPartlon's failure to provide timely notice of an "occurrence." Thus, CCC is entitled to summary judgment on McPartlon's bad faith claim.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that CCC's motion for summary judgment (Dkt. No. 23, 1:15-cv-299) is **GRANTED**; and it is further

**ORDERED** that McPartlon's cross motion for summary judgment (Dkt. No. 28, 1:15-cv-299) is **DENIED**; and it is further

**ORDERED** that McPartlon's amended complaint (Dkt. No. 5, 1:15-cv-299) is **DISMISSED**; and it is further

**ORDERED** that CCC's cross motion for summary judgment (Dkt. No. 10, 1:15-cv-1520) is **GRANTED** and therefore CCC owes no defense or indemnity coverage to McPartlon in the underlying state court lawsuit filed by Rashiek Haynes; and it is further

**ORDERED** that McPartlon's motion to dismiss (Dkt. No. 8, 1:15-cv-1520) is **DENIED AS MOOT**; and it is further

**ORDERED** that the Clerk close both cases; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 26, 2017
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge